## TERRITORY *v.* LARA P. GOOD.

### No. 1435.

ERROR TO CIRCUIT COURT FIRST CIRCUIT.
HON. J. R. DESHA, JUDGE.

ARGUED FEBRUARY 26, 1923.                DECIDED MARCH 20, 1923.

PERRY AND LINDSAY, JJ., AND CIRCUIT JUDGE BANKS
IN PLACE OF PETERS, C. J., DISQUALIFIED.

BASTARDS—*proceedings under bastardy laws—nature of proceedings—burden of proof.*

The proceedings provided for by R. L., Ch. 172, relating to the support of bastards, are civil in their nature. It is sufficient, therefore, in order to justify a judgment against the respondent for the support of the child, if the petitioner's case is proven by a preponderance of the evidence.

WITNESSES—*cross-examination—discretion of trial court.*

> The extent of cross-examination is a matter more or less in the discretion of the trial court. In this case, under all of its circumstances, that discretion is held not to have been abused in the disallowance of certain questions on cross-examination of the prosecutrix.

EVIDENCE—*erroneous rulings cured by answer of witness.*

> The overruling of an objection to an indefinite and vague hypothetical question addressed to a medical expert is not prejudicial when the answer of the witness is not any more unfavorable to the objector than were other answers of the same witness received without objection.

JUDGMENTS—*nature and essentials—form of adjudication.*

> Under R. L., Ch. 172, the adjudication of paternity need not be in any particular form of words. It is sufficient if the language used is such as to constitute in substance and effect an adjudication on the subject.

OPINION OF THE COURT BY PERRY, J.

In a proceeding instituted and maintained under R. L., Ch. 172, the respondent was found by a circuit judge to be the father of the child of the complainant, an unmarried woman, and was ordered to pay a stated sum of money monthly for the support of the child. The case comes to this court upon a writ of error sued out by the respondent.

1. There are twenty-three assignments of error. One of them is that the trial court erroneously held that the proceeding is civil in its nature and that it is sufficient for the Territory's case to be proven by a preponderance of the evidence. It is a well-settled doctrine of the criminal law that in criminal cases the guilt of the defendant must be shown beyond a reasonable doubt in order to justify a conviction. It is equally well settled that in civil proceedings the plaintiff should recover if he proves his case by a preponderance of the evidence. A criminal proceeding is one prosecuted by the people against a person charged with a public offense for the punishment

thereof. 8 A. & E. Ency. L. 252; 16 C. J. 50. It is said that proceedings in bastardy are, according to the weight of authority, civil in their nature, that the rules of evidence that govern in civil cases apply and that the paternity of the child may be proved by a preponderance of testimony alone and need not be established beyond a reasonable doubt. 3 A. & E. Ency, L. 874. Since, however, bastardy proceedings such as those here under consideration are a departure from the common law and purely statutory, the precise nature of the proceeding in any particular jurisdiction must be determined in the light of the statutory provisions there prevailing. Many cases on the subject have been cited in the argument of the case at bar, some to the effect that the proceeding is civil in its nature and others to the effect that it is criminal. Each of them depends upon the statutory provisions there under consideration. Similarly in the case at bar the decision must be based upon the provisions of our statute.

We are satisfied from an examination of our statute that in this jurisdiction the proceeding is civil and not criminal. There are indeed certain provisions, as, for example, the authorization of a sworn complaint by the complainant and of a warrant of arrest and the use of certain terms, as, for example, the reference to the respondent as the "accused" and to the proceeding as a "prosecution," which might, standing by themselves or taken with other provisions and language of similar import, be held to indicate that the proceeding is criminal in its nature; but in its essence what is authorized by our statute is purely a civil judgment against the respondent to pay a sum or sums of money for the support and maintenance of the child during the earlier years of its life. These provisions were doubtless made, not only as a matter of simple justice to the child and its mother but

also to protect the community at large from the burden of supporting the child. No authority is anywhere in the statute given for the punishment of the respondent in any manner. Neither fine nor imprisonment by way of punishment is authorized. It is not a proceeding to punish the defendant. The statute does, it is true, authorize the requirement of a bond for the appearance of the respondent and for the performance by him of such judgment as the court may render and so also authority is given for the imprisonment of the respondent after judgment until he shall give such bond as is lawfully required or pay the total amount of the sums adjudged against him. It is also provided that if, upon being so committed to jail for failure to give a bond, he shall show that he has no property exceeding $20.00 in value, except such as is by law exempt from execution, he shall be discharged from the imprisonment. The power to commit to jail for failure to perform the judgment is one that exists in courts of equity and perhaps in other courts and is referable to the power to punish for contempt. While these provisions give a more summary and stringent character to the process by which the respondent is brought into court and held to answer the charge and to perform the judgment, they do not alter the essential nature of the proceeding as a whole, which is simply one designed to provide an award of a money judgment for the support of the child and is not one for the punishment of the respondent for a crime. It necessarily follows that it is sufficient, in order to justify a judgment against the respondent, for the Territory to prove its case by a preponderance of the evidence.

2.  Another alleged error is that the respondent was unduly limited by the trial court in his attempted cross-examination of the prosecutrix, in that he was not permitted to ask her questions concerning her relations with another man prior to the alleged intercourse with the

respondent. It will be necessary at this point to refer to the facts and the evidence in the case. This will be done as briefly as possible. It appeared from the evidence at the trial that the complainant on September 1, 1920, or two or three days prior thereto entered the employ of an army officer and his wife at Salt Lake City, Utah, as nurse or companion to two of her employers' children. On September 16, 1920, the complainant and her employers and their family left for San Francisco, California, and in due course embarked on an army transport, arriving in Honolulu on September 25. On the same or the following day all went to Schofield Barracks, on this island, and there took up their residence. On the way to Honolulu, on the transport, the complainant and the respondent met. Complainant testified that there were two acts of intercourse in the month of October, 1920. As to the dates of these acts she did not purport to be certain but her testimony evidently was that they were somewhere between the 11th and the 20th of the month and a few days apart from each other. The respondent wholly denied all intercourse with the complainant. Several medical experts gave testimony, some at the request of the Territory, others at the request of the respondent. In effect they testified, without any noticeable disagreement, that the ordinary and usual period of gestation is from 270 to 280 days; that sometimes the period is as long as 295 or 300 days; and that there are reputable medical authorities which say that cases have been known where children have been born after a period of gestation of as much as 330 or 340 days. None of those who so testified claimed to have had any personal knowledge of any of these extreme periods. Basing his questions upon the contention that the complainant's child, which was born on July 8, 1921, may have been conceived as the result of intercourse had prior to the complainant's

departure from Utah (295 days elapsed from September 16, 1920, the date of this departure, to July 8, 1921) the respondent in cross-examination of complainant asked her questions concerning her relations with a man here referred to as M, in Salt Lake City, prior to September 11, 1920; and to a certain extent those questions were disallowed. By consent of counsel for the government, upon the theory evidently of a possible normal period of gestation of 300 days, no questions were disallowed relating to the relations of the complainant with M on or subsequent to September 11.

The respondent's contention in this court is that it sufficiently appears from the evidence that one or two evenings prior to her departure from Salt Lake City for Honolulu and in the veranda of her employers' house, the complainant had sat until a late hour with M in a hammock and had then and there had an opportunity for intercourse with him; and that this having been shown, it was prejudicial error not to be further allowed to show a prior adulterous disposition on the part of the complainant towards M. There was some slight evidence from one of the complainant's employers technically susceptible of the construction that perhaps intercourse was had in the hammock on the occasion just referred to. It would seem to serve no good purpose to recite this evidence in detail. At best it might suffice to raise a suspicion of intercourse but would scarcely be evidence sufficient to uphold a finding that it occurred at that time. The complainant absolutely denied that there was any intercourse between her and M on that occasion or on any other occasion, either at her employers' home or elsewhere; and there was no other evidence in the case tending in the remotest degree to show that there was intercourse between her and M.

There were two ultimate issues of fact before the trial

judge.    One was whether the complainant and the
respondent had intercourse with each other.    The other
was whether the respondent was the father of the child
that was born on July 8, 1921.    The questions so dis-
allowed on cross-examination of the complainant could
not possibly, with the answers thereto, have thrown any
light upon the second of these issues.    The complainant
consistently denied, as above stated, any intercourse
whatever with M but assuming that the further cross-
examination might have resulted in an admission by her
that such acts did occur, that would not aid the court in
determining whether intercourse was had by her with the
respondent or whether the respondent was the father of
the child.    The trial in this case began on February 27,
1922, and ended March 20, 1922.    M was not called as a
witness nor was his deposition offered in evidence.    Tes-
timony was taken which, when transcribed, covers over
nine hundred pages of transcript.    An abundance of evi-
dence was taken on the two sides of the issue of inter-
course or no intercourse with the respondent and the trial
judge made his very definite finding in favor of the com-
plainant upon this issue.    On the other subject, that of
the paternity of the child, the investigation conducted by
the trial judge was equally extended and thorough.    The
physician who attended the complainant at the time of the
birth of the child and who had also made an examination
of her about one month preceding the birth, another phy-
sician who examined the complainant on February 9,
1921, another who made what he termed a partial exami-
nation of her on January 12 or 13, 1921, and still another
who examined her on January 31, all reported in detail
the conditions which they found.    Their testimony was
all to the effect that the physical conditions existing in
the mother during her pregnancy, the condition of the
child as to development and in several details which they

mentioned, were such that in the light of their expert knowledge and of their experience in similar cases, their opinion was that the child had been in utero the usual and ordinary period of nine months and not much more. The trial judge expressly found as a fact that the child when born was a nine months' child and had not been in gestation a longer period. His finding is amply supported by the evidence, although it is true that there is some evidence possibly tending to the contrary from other physicians who did not examine the mother during pregnancy.

The questions asked of the complainant in cross-examination, the disallowance of which is under consideration, could not if allowed have brought from the complainant any expert testimony concerning the usual, the probable or the possible periods of gestation. She was not an expert. Assuming that if the questions had been allowed the answers would have been to the effect that there was intercourse before September 16 between the complainant and M, the trial court could not possibly have been aided thereby in determining the length of the period of gestation which did actually occur in this instance. It was upon other evidence in the case that he necessarily relied in determining the issue of whether the child which was born on July 8 was conceived in the early part of October or, on the other hand, at any time prior thereto.

The extent of cross-examination is a matter more or less in the discretion of the trial judge. In the instance under consideration, we think that that discretion was not abused. In the light of the thoroughness of the trial which was had, the consistent denials of the complainant that she ever had intercourse with M, the total absence of any other evidence tending to show that she did have intercourse with M, the abundance of the evidence relating to the usual, the probable and the possible periods of gestation and the definite finding of the trial court that

this was a nine months' child, the failure to allow further cross-examination of the complainant was clearly not prejudicial to the respondent and therefore did not constitute reversible error.

3.　In his direct examination the respondent testified that after certain conversations with him in which the complainant had charged him with the paternity of the child, he made an official report of the matter to Colonel Dashiels who was then commanding the regiment of which the respondent was a member.　On cross-examination, without objection, he further testified that after making this report he requested that Colonel Dashiels be relieved from duty as investigating officer and that a board of inquiry be appointed in his stead.　From this alone the trial court, if it in fact felt any interest in the matter, might well have suspected that Colonel Dashiels had at that time disclosed that his views on the subject were unfavorable to the respondent.　However that may be, the respondent was next asked on cross-examination whether in the written report which he had made concerning Colonel Dashiels' acts in the premises he had alleged any bias or prejudice or unfairness on the part of that officer. In objecting to this question, counsel for the respondent stated no ground other than this: "I don't know whether Colonel Dashiels was biased or prejudiced.　I wasn't connected with the case at that time."　The objection was overruled and the answer was in the affirmative.　The witness being further asked to specify what the bias or prejudice consisted of, as stated in the written report, respondent's counsel said, "I object to all this line of examination" but stated no grounds for the objection. The answer was, *inter alia,* that the report had contained a statement of the fact that Colonel Dashiels had expressed himself as believing that the respondent was guilty.　It was only after this evidence was given that the

respondent for the first time stated a legal ground for the objection, that ground being that the evidence asked for was irrelevant, incompetent and immaterial and not cross-examination. The testimony given after the statement of these grounds did not materially differ from that already given. A motion was subsequently made to strike all of this testimony from the record upon the ground of incompetency, irrelevancy and immateriality. There can be no doubt that the fact that Colonel Dashiels had expressed an opinion as to the guilt of the respondent and what that opinion was, were both wholly immaterial to the issues then before the court. We think, however, that the error was not such as to justify a reversal of the judgment or a new trial. Passing without further comment the point that no legal ground of objection to the cross-examination was stated prior to the admission of substantially all of the evidence now complained of, we would not be justified in saying that the trial judge was influenced, in arriving at the findings of fact which he made, by the knowledge of what Colonel Dashiels' view was after a decidedly incomplete investigation. Nor is there any reason for supposing that if the objections to the evidence under review had been sustained the trial judge would have arrived at any different conclusion on either of the two ultimate and important issues of fact above referred to. A careful reading and study of all of the lengthy testimony adduced in the case leaves room for no other conclusion. It may be that under other circumstances and with a trial of a wholly different nature such an error as this would be held reversible, but all of the circumstances of a given case must be considered. The two main issues, those relating to fornication and paternity, were both well defined and well understood throughout the trial by all concerned. The trial judge has shown by his detailed decisions (an original decision and there-

after an amended decision were filed by him) that he well understood what these two issues were and their importance, and well appreciated the responsibility resting upon him to weigh the conflicting evidence and to decide the issues in accordance with the facts as he believed them to have occurred. A thorough study of the nine hundred pages and more of testimony adduced shows that the incident concerning Colonel Dashiels' investigation occupied a very minor part at the trial. Under all of these circumstances, to now order a reversal and a new trial because of this item of incompetent evidence would be wholly unwarranted and not in accordance with justice or common sense.

4. The complainant's testimony was that the first act of intercourse was had with both parties in a standing position and that she had resisted in a manner described by her on the stand. She also testified that this resistance so offered was not to the utmost of her physical ability, giving as her reason that she felt at that time a certain degree of affection towards the respondent. She also testified to pleadings or exhortations on her part to him to desist. A medical expert was asked to state the "amount of pain involved" in this resistance "tempered by her affections,"—respondent's testimony theretofore given further tending to show that shortly prior to the date of the alleged first act of intercourse he had suffered an injury affecting to some extent the muscles of his shoulders and vicinity. The question was objected to (without any grounds being stated for the objection), the objection was overruled and the ruling is assigned as error. The witness' answer was "I think I answered a similar question by saying that he probably would suffer some pain; that is my recollection but that the pain I would not say would be excruciating. Again passing by the fact that no ground was named for the objection, no

prejudicial error was committed. The same question in varying forms had been asked by both counsel, without objection, and answered—and the answer to the particular question now under consideration was no more unfavorable to the respondent than any of the other testimony the witness had given on the same subject.

5. A motion for a new trial was made upon the ground, among others, of newly discovered evidence. The alleged newly discovered evidence is claimed to indicate that one N, an officer at Schofield, was the father of the child but no affidavit by N was offered in support of the motion to the effect that the fact was as claimed by the respondent and that N would, if called, testify to that fact. The affidavits offered in support of the motion are merely to the effect that N made statements to the affiants admitting, to one expressly and to the other by inference, that he (N) was the father of the child. In response to the motion the Territory filed an affidavit sworn to by N, denying that he had ever made the statements imputed to him and that he had ever had intercourse with the complainant. Upon this showing, the granting of a new trial would not be justifiable. There was, in reality, no offer of any evidence, newly discovered or otherwise, tending to sustain a charge of paternity on the part of N. The express showing was that N, if called, would deny that charge.

6. It is claimed that no adjudication relating to the paternity of the child was made by the trial court and that therefore the decree cannot stand. In both the original and the amended decisions the court expressly declares that it "is of the opinion and so holds" that the respondent "is the father of the child" of the complainant. This is a sufficient adjudication of the fact of paternity. No particular form of words is necessary in

order to constitute an adjudication. The trial court's meaning in this instance is unmistakable.

We have considered all of the other assignments of error and find no cause therein for a reversal of the judgment or the granting of a new trial.

The decree appealed from is affirmed.

*B. S. Ulrich* (*Thompson, Cathcart & Ulrich* on the briefs) for plaintiff in error.

*H. K. Ashford,* Second Deputy City and County Attorney (*W. H. Heen,* City and County Attorney, and *J. C. Kelley,* First Deputy City and County Attorney, with him on the brief), for the Territory.