## HONOLULU RAPID TRANSIT COMPANY, LIMITED, v. CHARLES T. WILDER, TAX ASSESSOR FOR THE FIRST TAXATION DIVISION OF THE TERRITORY OF HAWAII.

### No. 1848.

ARGUED NOVEMBER 23, 1928.    DECIDED DECEMBER 26, 1928.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

The Honolulu Rapid Transit Company, Limited, made a tax return as of January 1, 1928, in which it gave as the aggregate value of its business enterprise

$1,750,000 and as the tax due thereon $65,625. The tax assessor for the first taxation division of the Territory disagreed with the return and raised it from the amount fixed by the taxpayer to $2,500,000 and raised the tax to $93,750. The parties in an agreed statement of facts have brought their differences to this court for determination.

The following are in substance the essential facts agreed upon: The taxpayer, which is a corporation, derived its existence from Act 69, L. 1898, as amended by Act 186, L. 1921, and thus held on January 1, 1928, a public utility franchise and was occupying certain public streets and highways in the city of Honolulu along which its tracks were laid and over which it operated its street cars. Section 12 of said Act provided that "the company shall, during the month of January of each year, pay to the City and County of Honolulu two and one-half per cent (2½%) of its gross income from its railway during the preceding calendar year." At the time of this enactment the taxpayer was operating on a five-cent fare. This being insufficient, however, to produce a fair return upon its capital, under the authority of the public utilities commission the rate of fare was increased to a cash fare of seven cents or four tokens for twenty-five cents. This increase became effective October 1, 1924. It was later considered that this increased fare would still not be sufficient to yield a fair return and in the hope that a decrease in tax obligations might result in keeping the fare where it was for the time being, the legislature in 1925, by Act 227, amended section 12 of the taxpayer's franchise to read as follows: "Annual payment to city and county. The company shall, during the month of January of each year, pay to the City and County of Honolulu two and one-half per cent (2½%) of its gross income

from its railway during the preceding calendar year, provided, however, that no such payment shall be made, and said company shall be exempt therefrom, for each and all of the calendar years beginning January 1, 1925, and ending December 31, 1928, also provided, however, that if the Honolulu Rapid Transit Company, Limited, is granted an increased fare over the existing street car fare, that this aforesaid exemption shall cease from the date of the inauguration of such increased fare." Section 1320, R. L. 1925, which deals with the "basis of value for taxation," contains the following provision: "The combined property of every corporation holding a public utility franchise and occupying the public streets or highways of the Territory, other than any such corporation that by the terms of its franchise is required to pay a percentage of its gross income to the Territory, or county or city and county, shall be valued and assessed at not less than the total amount of the par value of the capital stock issued by such corporation."

The total amount of the par value of the capital stock of the taxpayer issued as of January 1, 1928, was $2,500,000. The fair and reasonable aggregate value as a whole of the taxpayer's property, for assessment purposes as of January 1, 1928, was $1,750,000. Between October 1, 1924, and January 1, 1928, there was no increase of fares by the taxpayer. On April 15, 1928, however, under the authority of the public utilities commisson, the rate of fare was increased to a cash fare of ten cents or two tokens for fifteen cents. It is agreed that this increase was also necessary in order that the taxpayer might realize a fair return upon its capital. The foregoing facts and legislative enactments we believe present the points of difference between the parties which we will first consider.

The claim of the tax assessor is that the taxpayer

was not on January 1, 1928, required by the terms of its franchise, to pay a percentage of its gross income to the Territory or any county or city and county and that therefore under the provision of section 1320 above quoted its combined property was assessable at not less than the par value of its issued capital stock, which was $2,500,000. The taxpayer stoutly denies this claim, its contention being that it was required by its franchise to pay to the City and County of Honolulu a percentage of two and one-half per cent on such income.

We think this contention is settled by the agreed facts and the legislation to which we have already referred relating to the taxpayer's franchise. Prior to Act 227, L. 1925, Act 186, L. 1921, constituted the taxpayer's charter or franchise. Section 12 of its franchise as it then existed required the company to pay to the City and County of Honolulu on the first day of January of each year two and one-half per cent of its gross income. It is agreed by the parties that in 1925 the legislature by Act 227 *amended this franchise.* This amendment was a re-enactment of the provisions of section 12 of Act 186 and also an enactment that the tax of two and one-half per cent should not be paid and the company should be exempt therefrom for each and all of the calendar years beginning January 1, 1925, and ending December 31, 1928, unless the company was before the latter date granted an increased fare over the existing fare. On January 1, 1928, the assessment date, the taxpayer had not been granted an increased fare nor had its exemption from payment of two and one-half per cent of its gross income expired by limitation of time. It thus appears *by the terms of its franchise* that the taxpayer was required to pay the two and one-half per cent at all times *except* when it was specifically not required to pay it. It was not required to pay it on

January 1, 1928, that date being within the period of its exemption from payment. It would be a manifest contradiction to say that it was by the terms of its franchise required at one and the same time to pay this percentage and not required to pay it.

When the legislature declared, as it did in section 1320, that the combined property of a certain class of corporations therein described "shall be valued and assessed at not less than the total amount of the par value of the capital stock issued by such corporation," it manifestly meant that such assessment and valuation should be made as of January 1 of each year (that being the assessment date), provided the corporation belonged on that date to the class against which such assessment was authorized. In other words, when the assessor came to make his assessment upon the combined property of the Honolulu Rapid Transit Company as of January 1, 1928, he was, in order to determine upon what basis the assessment should be made, obliged to ascertain whether, by the terms of its franchise as it *then existed,* and not as it had *theretofore existed,* the company was at that time required to pay a percentage of its gross earnings to the Territory or a county or city and county. If, as we think, it was not so required, the assessment was properly based on the par value of its issued capital stock.

It is the contention of the taxpayer that its status, so far as the assessment of its property under the provisions of section 1320 is concerned, was unaffected by Act 227 and that it remained and was on January 1, 1928, the same as it was before Act 227 was passed, that is to say, it was a public utility corporation which by its franchise was required to pay a percentage of its gross income to the City and County of Honolulu. This contention is based on the agreement of the parties that the purpose of the

legislature in passing Act 227 was to lighten the burdens of the taxpayer during a specific period. It is claimed therefore that the Act must be given such construction as will effectuate that purpose. It is pointed out by way of argument that unless this view is adopted the taxpayer will be required to pay more taxes for the year 1928 than it would have been required to pay if Act 227 had never been passed—in other words, that a tax of two and one-half per cent on its gross income for the year previous to 1928, added to the tax of 3.526 per cent on the actual value of its combined property would be less than a tax of 3.526 per cent on the par value of its issued capital stock. The vice of the contention and the argument is that the language used by Act 227 is so clear and unambiguous as to leave no doubt of its meaning, and therefore we are not at liberty, without assuming a legislative function, to read into it a legislative intention of which it gives no intimation. This court said in *Irwin* v. *Ahia*, 29 Haw. 1, 5: "As to the general rule applicable in the construction of statutes there can be no doubt. The object is always to ascertain and give effect to the intention of the legislature. 'This intention, however, must be the intention as expressed in the statute, and where the meaning of the language used is plain, it must be given effect by the courts, or they would be assuming legislative authority.' 36 Cyc. 1106, 1107. 'Whatever is necessarily or plainly implied in a statute is as much a part of it as that which is expressed. But a statute should not be extended beyond the fair and reasonable meaning of its terms because of some supposed policy of the law, or because the legislature did not use proper words to express its meaning.' Ib., 1112, 1113." If it has turned out that the application of Act 227 has not accomplished but defeated the unexpressed purpose of the legislature the remedy is not with us but with the lawmaking body.

It is further contended by the taxpayer that in no

event can it be taxed on the total amount of the par value of its issued capital stock when such amount, as in the instant case, exceeds the fair and reasonable aggregate value as a whole of its property. More specifically, its contention is that the clause of section 1320, R. L. 1925, above quoted, is unconstitutional and void and therefore conferred no authority upon the tax assessor to make the assessment he did make. The constitutional provisions claimed to have been violated are the following portion of section 1 of the Fourteenth Amendment of the Federal Constitution: "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

In this connection our attention is directed to section 1315, R. L. 1925, the pertinent portion of which is as follows: "General property taxes. Except as exempted or otherwise taxed, all real property and all personal property, within each taxation division shall be subject to a tax each year of such rate per cent upon the full cash value thereof as shall be fixed and determined for that year in the following manner and generally for the following purposes:" It is argued that the legislature having thus fixed the basis of taxation for all real and personal property at the full cash value thereof it was violative of the due process clause and the equal protection clause of the Fourteenth Amendment for it to authorize a different and in this case a higher basis for the valuation of the property of the class of corporations to which we think the Honolulu Rapid Transit Company belonged.

Speaking of the equal protection clause and the due process clause, the Supreme Court of the United States in *Louisville Gas Co.* v. *Coleman,* 277 U. S. 32, 37, said: "The equal protection clause, like the due process of law clause, is not susceptible of exact delimitation. No defi-

nite rule in respect of either, which automatically will solve the question in specific instances, can be formulated. Certain general principles, however, have been established in the light of which the cases as they arise are to be considered. In the first place, it may be said generally that the equal protection clause means that the rights of all persons must rest upon the same rule under similar circumstances, *Kentucky Railroad Tax Cases,* 115 U. S. 321, 337; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 293, and that it applies to the exercise of all the powers of the state which can affect the individual or his property, including the power of taxation. *County of Santa Clara* v. *Southern Pac. R. Co.,* 18 Fed. 385, 388-399; *The Railroad Tax Cases,* 13 Fed. 722, 733. It does not, however, forbid classification; and the power of the state to classify for purposes of taxation is of wide range and flexibility, provided always, that the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415; *Airway Corp.* v. *Day,* 266 U. S. 71, 85; *Schlesinger* v. *Wisconsin,* 270 U. S. 230, 240. That is to say, *mere* difference is not enough: the attempted classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.' *Gulf, Colorado & Santa Fe Ry.* v. *Ellis,* 165 U. S. 150, 155."

It is true that in the case from which the above quotation is taken the classification made by the legislature of Kentucky was held to have been arbitrary and therefore unconstitutional but we think it quite appropriate to consider the general rules laid down by the court for the

purpose of determining the validity of the statute whose constitutionality is questioned in the instant case.

In *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, the essential fact is so similar to the essential fact in the instant case that the decision in the *Bell's Gap* case is of peculiar importance. The essential fact in the *Bell's Gap* case was that by the law of Pennsylvania all moneyed securities were subject to an annual tax of three mills on the dollar of their *actual value,* except bonds and other securities issued by corporations, which latter were taxed at three mills on the dollar of their nominal or par value. The essential fact in the instant case is that by the law of Hawaii all property, both real and personal, is assessable at its full cash value, except the property of corporations holding a public utility franchise and occupying the streets and highways of the Territory (other than any such corporation that by the terms of its franchise is required to pay a percentage of its gross income to the Territory or any county or city and county) and that the value of the property of such corporations shall be assessed at not less than the total value of their issued capital stock.

It was contended by the Bell's Gap Railroad Company, a corporation, certain of whose securities had been taxed at their nominal or par value instead of at their actual value, that the Pennsylvania statute authorizing such taxation was an arbitrary discrimination against corporations and therefore violative of the equal protection clause of the Federal Constitution. The taxpayer in the instant case in effect makes the same contention. In the *Bell's Gap* case the court, after referring to some questions that are not involved in the present case, went on to say (pp. 236, 237) : *"As to the assessment of the tax of three mills upon the nominal or face value of the bonds, instead of assessing it upon the actual value.* This might have been

subject to question under the state laws; but the state courts have upheld the assessment as valid. We are to accept it, therefore, as part of the state system of taxation, authorized by its constitution and laws. Then, how does it violate any provision of the Constitution of the United States? It is contended that it violates the first section of the Fourteenth Amendment, which forbids a State to withhold from any person the equal protection of the laws. We do not perceive that the assessment in question transgresses this provision. There is no unjust discrimination against any persons or corporations. The presumption is that corporate securities are worth their face value. Besides, the person that holds them is not affected by the tax unless he receives his interest from which the tax is deducted. So long as the interest is paid the security has to him full productive value; when it is not paid he pays no tax. But, be this as it may, the law does not make any discrimination in this regard which the State is not competent to make. All corporate securities are subject to the same regulation. The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and

general usage, are within the discretion of the state legislature, or the people of the State in framing their Constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject, that would include all cases. They must be decided as they arise. We think that we are safe in saying, that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation." Speaking finally and conclusively on this phase of the case, the court then said (p. 238) : "With due regard to these considerations, we are clearly of opinion that the method of assessing the tax in question, on the face value of corporate securities in Pennsylvania, is not violative of the Fourteenth Amendment to the Constitution."

It is argued by the taxpayer that the *Bell's Gap* case is clearly distinguishable from the instant case for the reason that in the former case the court assumed that the par value of the securities that were taxed was equal to their actual value, whereas it is admitted in the instant case that the par value of the taxpayer's issued capital stock was on January 1, 1928, much larger than the actual value of its property. It is true that in the *Bell's Gap* case the court said : "The presumption is that corporate securities are worth their face value." That this assumption, however, did not influence the decision is shown by the later case of *Jennings* v. *Coal Ridge Improvement & Coal Co.,* 147 U. S. 147. In that case, which involved the same Pennsylvania law, it appeared that the market value of the corporate securities was less than their face value. The law was nevertheless upheld on the authority of the *Bell's Gap* case. These cases have never been over-

ruled or modified. The *Bell's Gap* case has often been cited and quoted with approval in later decisions of the great court from which it emanated. Running through all the cases in which the due process clause and the equality clause of the Fourteenth Amendment are discussed is the cardinal rule that they do not forbid a State to classify for the purposes of taxation. The inexorable restriction placed upon this right is that the classification shall be reasonable and not merely arbitrary. As was said in *Gulf, Colorado & Santa Fe Ry.* v. *Ellis,* 165 U. S. 150, 165: "In all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection." In fixing a different standard of valuation for taxation purposes upon the property of corporations holding a public franchise and occupying the public streets and highways of the Territory (and who are not required to pay a percentage of their gross income to the Territory or any county or city and county) from that fixed for other property, the legislature did not make an arbitrary and unreasonable classification. The classification was made in the exercise of legislative judgment and discretion. Such corporations enjoy rights and privileges that are not accorded other property owners and if the standard of valuation fixed for their property requires them in certain instances to pay a higher proportion of taxes than other property owners are required to pay they cannot escape their obligation through the constitutional provisions to which we have referred. The classification made in the instant case was certainly as reasonable as that made in the *Bell's Gap* case.

For the foregoing reasons it is our conclusion that

the taxpayer should pay a territorial property tax on $2,500,000. A judgment will be signed accordingly upon presentation.

*J. G. Anthony* (*Robertson & Castle* on the briefs) for plaintiff.

*C. N. Tavares,* Second Deputy Attorney General (also on the briefs), for defendant.