# IN THE MATTER OF THE APPLICATION OF JOSEPHINE SILVA FOR THE SUPPORT OF HER BASTARD CHILD.

## No. 2070.

ARGUED OCTOBER 9, 1933.          DECIDED NOVEMBER 1, 1933.

PERRY, C. J., BANKS AND PARSONS, JJ.

856

OPINION OF THE COURT BY PARSONS, J.
(Banks, J., dissenting.)

This is a statutory bastardy proceeding, before us upon writ of error issued upon the application of Masao Takamatsu accused, against whom verdict and judgment were rendered in the court of domestic relations. The record shows that application for the relief provided by statute was made under date of May 15, 1931, by Josephine Silva, who therein charged in effect and among other things that on November 18, 1930, in Honolulu, she gave birth to a female child; that Masao Takamatsu is the father of said child, which was begotten on or about February 18, 1930; that on said last named date applicant was a resident and is still a resident of Honolulu; that on said last named date and prior thereto the accused was a resident of Honolulu where he has since resided and where he now resides; and at the time said child was begotten and at the time said child was born the applicant was an unmarried female. Said application was supported by applicant's affidavit bearing the same date and to the same effect. The statement of facts by Josephine Silva, upon examination under oath as required by section 3054, R. L. 1925, was signed by the judge of said court and was thereafter filed. The statement recites that said examination was on the 15th day of May, 1931. Its allegations are to the same effect as the application and affidavit and it contains, *inter alia,* the additional averment "that applicant is now of the age of sixteen

years and ten months; and applicant is informed and believes that said Masao Takamatsu is of the age of 18 years."

At or about 1:45 P. M., May 18, 1931, the above named application, affidavit and statement of facts, together with a so-called warrant of arrest, were delivered by a clerk of the division of domestic relations to John Lee Kwai, a clerk of the first circuit court, with the request that the latter file the same. This, John Lee Kwai proceeded to do, the filing stamp bearing the date and hour last above set forth. At that time the warrant of arrest was unsigned and the return day was left blank. A return day was supplied and inserted by the clerk and the unsigned warrant was returned to the clerk of the division of domestic relations who, two days later, to-wit, on Wednesday, May 20, 1931, returned it to the filing clerk with instructions to place it in the hands of a police officer for service. The earlier return day above referred to having then already arrived, a new return day was inserted by the clerk and the warrant was placed in the hands of a police officer for service and was by the latter served upon the accused the following day, to-wit, May 21, 1931.

The warrant of arrest as served upon the accused was signed by the judge and among other things directed that the serving officer arrest the accused and have the latter's body before the judge of said court at the latter's court room at 9:30 A. M., Friday, May 29, 1931. As shown by the officer's return of service the application, affidavit, statement of facts and warrant of arrest were served upon the accused by the delivery to him of certified copies of the same and exhibition to him of the originals. On the return day the accused, under a special appearance, moved that the said warrant and purported service thereof be quashed on the ground "that said warrant of arrest does

not run in the name of 'The Territory of Hawaii,' " as required by law. Whereupon the court permitted the warrant of arrest to be amended by inserting after the words "warrant of arrest" the words "the Territory of Hawaii" and denied the motion to quash, which ruling was duly excepted to. The first assignment by the accused is that the court erred in overruling said motion to quash.

On June 12, 1931, the accused, under special appearance, filed in said court and cause his plea in bar based upon the following grounds, namely: "1.—That the prosecution of said matter was begun more than six months after the birth of the child referred to in the files of said matter; 2.—That he is a minor; 3.—That no proper or any process has been served upon him." This plea was supported by the affidavit of the accused deposing among other things that he was not yet twenty years of age, having been born October 21, 1912; and that during a period from the time prior to the 18th day of November, 1930, to and including the date of said affidavit he had been continuously a resident of Honolulu, City and County of Honolulu, Territory of Hawaii, during which period he had at no time been absent from said Territory. The plea in bar was overruled and exception taken. Accused's second assignment of error is to the order overruling said plea.

On February 16, 1932, the case came on for trial upon accused's plea of not guilty. Prior to the impaneling of the jury accused entered of record his objection to the taking of testimony, said objection being based upon the same grounds theretofore set forth as above recited in his motion to quash and plea in bar. The objection was overruled and exception noted. Accused's fourth assignment of error is to the last named ruling.

After trial the jury returned a verdict finding that

"the defendant, Masao Takamatsu, is the father of the illegitimate child of Josephine Silva," upon which verdict judgment, under date of May 6, 1932, was entered to the same effect, said judgment further ordering "that the said Masao Takamatsu shall pay to the said Josephine Silva, for the support of said child, the sum of eight dollars ($8.00) per month, the first payment to be made forthwith, the next payment to be made upon the 1st day of June, A. D. 1932, other installments to be similarly paid on the 1st day of each and every month, until said child shall have attained the age of two years; and the sum of ten dollars ($10.00) per month to be paid on the 1st day of each and every month, until the said child shall have attained the age of five years; and the sum of twelve and 50/100 dollars ($12.50) per month to be paid on the 1st day of each and every month, until the said child shall have attained the age of ten years; and from the time said child shall have attained its tenth year until it shall have attained its fourteenth year, to likewise pay the said Josephine Silva on the 1st day of each and every month the sum of fifteen dollars ($15.00), in case said child shall live to that time. All payments to be made at the office of the chief clerk of this court." Accused's seventh assignment of error is based on said judgment.

Accused's writ of error is supported by seven assignments, numbers one, two, four and seven being upon the rulings above set forth.

Assignment number three alleges error in the order overruling Masao Takamatsu's demurrer. A copy of the demurrer is not in the record before us and was not required by the praecipe. Assignment number three is not contained in counsel's specification of assignments of error relied upon, is not argued in his brief and was not presented orally. It is therefore deemed to have been waived and for that reason is not considered.

Assignment number five is that "the court erred in denying Masao Takamatsu's motion for a directed verdict," and assignment number six is that "the court erred in overruling Masao Takamatsu's motion for a new trial." Neither motion for a directed verdict nor motion for a new trial is copied in the record or referred to in the transcript or minutes of the clerk transmitted to this court. Assignments five and six therefore will not be considered.

This leaves for disposition assignments one, two, four and seven. The case is finally determinable upon jurisdictional grounds urged in assignment number two, repeated in assignments four and seven. In this view consideration of assignments one, and of assignments four and seven in other respects, is unnecessary. The part of assignment two last hereinabove referred to is thus set forth on page 62 of the record: "The court erred in overruling Masao Takamatsu's plea at bar in that the said Masao Takamatsu having appeared specially before the court for the sole purpose of presenting his plea in bar to the proceedings on the ground that the prosecution had been begun more than six months after the birth of the child of which it was alleged he was the father." Section 3063, R. L. 1925, as amended by Act 15, L. 1931, is applicable in the premises. It provides in part as follows: "No prosecution under this chapter shall be begun more than six months after the birth of the child," etc. Under the foregoing section when may a prosecution under chapter 179, R. L. 1925, as amended, with reference to bastardy proceedings, be said to have been begun? The deputy city and county attorney prosecuting this case under the provisions of section 3063 above quoted urges that such prosecution is begun by the filing of the application referred to in section 3054. This contention is based upon the fact that section 3054, as amended, among

other things provides in effect that the unmarried mother of an illegitimate child may, within six months after delivery thereof, apply for a warrant for the arrest of the accused father of such child. Other things, however, provided by statute in addition to application for warrant, must take place within the six months' period before the warrant can legally issue. For instance, as provided by the same section last above cited "before issuing the warrant, the judge shall examine the applicant under oath concerning the residence, the character and married or single condition of the mother when the child was begotten, the time and place where it was begotten, where and when it was born, if born, and such other circumstances as such judge shall deem necessary or proper for testing the truth of the accusation and shall reduce the statement of the applicant to writing and sign the same." Furthermore section 3055 provides in part: "If, on the examination, there appears probable cause to believe that the woman is quick with child or that the child, if born, is *still* under six months of age and that the accused person is the father thereof, the judge shall issue a warrant," etc. (The italics are ours.) Thus a holding that the mere filing of an application within six months after the delivery of the child terminates the running of the limitation period would be contrary to the direct provisions of the above quoted sections. The filing of the application therefore in this particular statutory proceeding is not the act referred to as the beginning of the prosecution. This view is strengthened by the reference in section 3054 to the refusal or neglect of the mother, after complaint, "to prosecute the same," and by the provision of section 3063, as amended, that "it shall be the duty of the county or city and county attorney to prosecute all proceedings arising under this chapter." As was held by this court in *Territory* v. *Good*, 27 Haw. 8,

proceedings under the chapter of the Revised Laws relating to the support of bastards are civil and not criminal. Nevertheless the proceedings are strictly statutory with specially provided rules of procedure, differentiated from general rules by applications for arrest of accused, preliminary examinations of applicants to determine probable cause, statements of testimony signed by the judge, warrants of arrest, arrest of accused, bonds for payment of judgment and commitment for default of payment of same. The word "prosecution" is peculiarly applicable to the issuance of warrants of arrest and the above named special proceedings subsequent thereto.

Under chapter 179, R. L. 1925, as amended, no steps are provided against the accused until after the preliminary *ex. parte* proceedings before the judge of the juvenile court in which the applicant is examined under oath and her statement reduced to writing and signed by the judge. Up to this point no provision is made for the judicial determination of the guilt or innocence, liability or nonliability of the accused. The trial of those questions comes later if it comes at all. Thus far the proceedings are provided to enable the trial judge to determine whether or not there appears probable cause to believe that the material accusations of the applicant are true. Only after affirmative determination of this preliminary question is provision made for proceedings against, or in other words the prosecution of, the accused. What act begins such a prosecution? The next act provided by statute is the issuance of a warrant. With omissions not material to this part of the inquiry section 3055 as above recited provides: "If, on the examination, there appears probable cause to believe * * * that the child * * * is still under six months of age and that the accused person is the father thereof, the judge shall issue a warrant," etc. In a criminal case (which this is not) prosecution, by

statutory provision, may be commenced by the issuance of a warrant. See §4105, R. L. 1925. In a civil case the question as to the time when process is issued has been judicially determined by the opinion of this court in *Gear* v. *Henry*, 21 Haw. 101-103. Quoting from the text of the opinion last above cited on page 103: "The date of signing a writ or summons by the magistrate is not, necessarily, the 'date of issue.' The summons in question, in our view of the case, was not 'issued,' in the sense contemplated by the statute, by the mere signing and delivery of it by the magistrate to the plaintiff's attorney, who had no authority to serve it. Process is 'issued' when it is prepared and placed in the hands of a person authorized to serve it with the intent to have it served." This conforms to decisions elsewhere. See *Houston* v. *Thornton*, 122 N. C. 365, 374; *White* v. *Johnson*, 27 Ore. 282, 297; *Howell* v. *Shepard*, 48 Mich. 472, 474. Analogy is found in criminal proceedings. Quoting from *Dubbs* v. *Lehman*, 100 Fla. 799, 130 So. 36, 37: "The mere making of an affidavit before a justice of the peace is not sufficient to constitute the commencement of a prosecution. The prosecution is not in progress until a warrant is issued. * * * The issuance of a warrant consists of the execution of the warrant by the committing magistrate and the placing of the warrant in the hands of a proper executive officer for execution."

In the case at bar the record does not disclose when the warrant was signed. It bears date of May 15, 1931. That at 1:45 P. M., May 18, 1931, it was still unsigned appears by the uncontradicted affidavit of John Lee Kwai, a clerk of the first circuit court. The earliest date at which the record shows it to have borne the signature of the judge was May 20, 1931, and on that date and no earlier, so far as the record shows, it was placed in the hands of a police officer for service. Under the foregoing

citations the prosecution may be said to have begun on the date last above named. That date being two days after the expiration of the six months' limitation period was too late under the statute. Defendant's plea in bar should have been sustained on that ground. For the reasons and within the limitations above set forth assignments two, four and seven are sustained.

The judgment of the circuit court is set aside and the case is remanded to the circuit court with instructions to sustain defendant's plea in bar on the ground above set forth.

*O. P. Soares* (also on the briefs) for plaintiff in error.

*G. R. Corbett,* Deputy City and County Attorney (also on the brief), for defendant in error.

### DISSENTING OPINION OF BANKS, J.

I am unable to agree with the majority of the court in its construction of the word "prosecution" as it appears in section 3063, R. L. 1925, as amended by L. 1931, Act 14, which provides that "no prosecution under this chapter shall be begun more than six months after the birth of the child * * *."

The effect of the opinion of the court is to exclude the application and affidavit of the mother of the child which was filed in the office of the clerk of the court before the expiration of the six months' period and to limit the beginning of the prosecution to the issuance of the warrant which was not done until after the bar of the statute had fallen. I think this is too restricted a view of the statute. It subjects the rights of the mother and of the child to the danger of being entirely lost through the delay of the judge whose duty it is to issue the warrant. This delay the mother is powerless to prevent. The filing of the sworn application of the mother is, I think, the initiation of the prosecution and the issuance of the war-

rant is nothing more than a successive step just as the arrest of the putative father and his trial are successive steps.

Webster defines "prosecution" as "the institution and carrying on of a suit or proceeding in a court of law or equity, to obtain or enforce some right, or to redress and punish some wrong." In *Ray Wong* v. *Earle C. Anthony, Inc.*, 199 Cal. 15, 18, 247 Pac. 894, it was held that "the term 'prosecution' is sufficiently comprehensive to include every step in an action from its commencement to its final determination." In *Clinton* v. *Heagney*, 175 Mass. 134, 136, the court said: "As applied to proceedings upon the civil side of a court the ordinary meaning of the word 'prosecution' includes the institution of a suit, and is not confined to the mere pursuit of a remedy after proceedings have been instituted." Under the authority of *Territory* v. *Good*, 27 Haw. 8, it is conceded by the majority that bastardy proceedings are civil and not criminal.