W. AU HOY, DOING BUSINESS UNDER THE NAME AND STYLE OF W. AU HOY MEAT MARKET, *v.* CHING MUN SHEE, DOING BUSINESS UNDER THE NAME AND STYLE OF HOFFMAN CAFE, DEFENDANT; BANK OF HAWAII, BISHOP FIRST NATIONAL BANK, LIBERTY BANK, NEW YORK SHOE STORE, LIMITED, GARNISHEES.

No. 2175.

ARGUED JULY 30, 1934.          DECIDED DECEMBER 4, 1934.

COKE, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY COKE, C. J.
(Banks, J., dissenting.)

Judgment having been rendered against her in the circuit court in the above proceeding the defendant, Ching Mun Shee, caused a writ of error to issue out of this court to review errors alleged to have been committed by the trial court. The plaintiff has interposed a motion to quash and dismiss the writ on the grounds, *inter alia,* "that plaintiff in error" (defendant) "has failed to comply with section 2529 of the Revised Laws of the Territory of Hawaii in that she failed to file the bond with this court before the issuance of the writ of error." The statute referred to provides: "No writ of error shall issue until the sum of twenty-five dollars has been deposited to cover costs, and, except in criminal cases and cases in which

there is no money judgment, a bond has been filed with the clerk, in favor of the prevailing party in the proceeding in which the error is alleged to have occurred, or his personal representatives, conditioned for the payment of the judgment in the original cause in case of failure to sustain the writ of error." The record before us shows that the writ of error herein was filed by the defendant with the clerk of this court and issued by the latter and that subsequently the bond required by statute was filed with the clerk. It is true the bond was filed forthwith after the issuance of the writ. We are of the opinion, however, that it is immaterial what particular length of time may have lapsed between the issuance of the one document and the filing of the other. It is solely a matter of priority which governs. The statute is mandatory in its terms and expressly prescribes that no writ of error in a case of this nature may be issued by the clerk until the bond required by the statute shall be first filed with him. It is argued that this court, under the guise of the rules of statutory construction, should rewrite section 2529 so that it will authorize the doing of a thing which the statute in its present form expressly prohibits and thus have this court invade what the law has set apart as an exclusive field of legislation. In construing a statute the object is always to ascertain and give effect to the intention of the legislature. Where a statute is dubious courts will resort to a consideration of the reason and spirit of it or the cause which induced its enactment. As this court clearly pointed out in its opinion in *Honolulu R. T. Co.* v. *Wilder*, 30 *Haw.* 685 at 690 (quoting from 36 Cyc. 1106) : "This intention" (legislative purpose), "however, must be the intention as expressed in the statute, and where the meaning of the language used is plain, it must be given effect by the courts, or they would be assuming legislative authority." The above opinion was affirmed by the circuit court of appeals, ninth

circuit. See 36 Fed. (2d) 159. Another eminent authority stating the same rule in different language says: "The statute itself furnishes the best means of its own exposition; and if the intent of the act can be clearly ascertained from a reading of its provisions, and all its parts may be brought into harmony therewith, that intent will prevail without resorting to other aids for construction." 2 Lewis' Sutherland, Stat. Const., 2d Ed., 665. See also *Crooks* v. *Harrelson*, 282 U. S. 55, and *Monson* v. *Chester*, 22 Pick. (Mass.) 385. Section 2529, R. L. 1925, is entirely free from any ambiguity whatsoever. Its terms are clear and unmistakable. It is susceptible of no judicial construction because there can be no doubt of its meaning. It contains no harsh, unjust or unusual provisions and the reasons which induced its enactment are obvious. It clearly was the intention of the legislature to prohibit the issuance of a writ of error by the clerk of this court until the plaintiff in error had deposited the sum of twenty-five dollars to cover costs which was to assure the payment of court costs and the filing of a bond with the clerk in favor of the prevailing party which of course was for the protection of the latter. There is nothing absurd, mischievous or unreasonable in these requirements and compliance therewith is a simple matter.

When the writ was presented to the clerk by the plaintiff in error and signed and filed by the former in his official capacity it was then in his hands for service upon the clerk of the court below (see § 2532, R. L. 1925) and the issuance of the writ was entirely completed. See *Re Josephine Silva*, 32 Haw. 855. It then became the duty of the clerk of this court to serve the writ upon the clerk of the lower court, the statute containing no fixed time within which such service should be made. The writ therefore was issued by the clerk before any bond was filed, a thing the statute in most direct and unequivocal language says shall not be done.

This court, in a recent illuminating opinion, says: "The filing of a bond is by section 2529 made a prerequisite to the issuance of a writ of error and is therefore indispensable to the jurisdiction of this court." *Kuapuhi* v. *Pa,* 31 Haw. 623, 624. See also *Correa* v. *Felippe,* 24 Haw. 672.

The identical question now under consideration was before the court in *Hackfeld & Co.* v. *Hilo Railroad Co.,* 14 Haw. 695. In that case the court granted the motion to quash the writ of error for the reason that the same was issued before the bond required by statute was filed and thus the court was without jurisdiction.

This is not a case where the documents were all transmitted to the clerk of this court by mail or handed to him simultaneously. Under those circumstances it would perhaps be the duty of the clerk to file and issue the documents in the order prescribed by statute.

Failure to comply with the statute in the present case is fatal to the validity of the writ and the motion to quash is therefore granted.

*W. Y. Char* for the motion.

*E. R. McGhee* contra.

### DISSENTING OPINION OF BANKS, J.

I am unable to agree with the majority of the court that the writ of error was improvidently issued. The filing marks on the documents appear as follows: "Application for Writ of Error Assignments of Errors. Filed June 28, 1934 At 1:30 o'clock P. M." "Writ of Error. Filed June 28, 1934 and issued same At 1:31 o'clock P. M." "Bond. Filed June 28, 1934 At 1:32 o'clock P. M."

The statute (§ 2529, R. L. 1925) provides that "no writ of error shall issue until * * * a bond has been filed with the clerk * * *." It is the conclusion of the ma-

jority that the writ issued in fact one minute before the requisite bond was filed and therefore it issued illegally and must be quashed. I do not agree with this conclusion. In reaching it the majority opinion places too technical and narrow a construction upon the statute and in adhering to its letter its purpose and spirit have been overlooked.

In construing the statute the established rules of construction should be borne in mind. In *Hawaii* v. *Mankichi,* 190 U. S. 197, the court said (pp. 212, 213): "But there is another question underlying this and all other rules for the interpretation of statutes, and that is, what was the intention of the legislative body? Without going back to the famous case of the drawing of blood in the streets of Bologna, the books are full of authorities to the effect that the intention of the lawmaking power will prevail, even against the letter of the statute, or, as tersely expressed by Mr. Justice Swayne in *Smythe* v. *Fiske,* 23 Wall. 374, 380: 'A thing may be within the letter of a statute and not within its meaning, and within its meaning, though not within its letter. The intention of the lawmaker is the law.' A parallel expression is found in the opinion of Mr. Chief Justice Thompson of the supreme court of the State of New York, (subsequently Mr. Justice Thompson of this court,) in *People* v. *Utica Ins. Co.,* 15 Johns. 358, 381: 'A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute, is not within the statute, unless it be within the intention of the makers.' Without going farther, numerous illustrations of this maxim are found in the reports of our own court. Nowhere is the doctrine more broadly stated than in *United States* v. *Kirby,* 7 Wall. 482, in which an act of Congress, providing for the punishment of any person who 'shall knowingly and wil-

fully obstruct or retard the passage of the mail, or any driver or carrier,' was held not to apply to a state officer who had a warrant of arrest against a carrier for murder, the court observing that no officer of the United States was placed by his position above responsibility to the legal tribunals of the country, and to the ordinary processes for his arrest and detention when accused of felony. 'All laws,' said the court, 'should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter.' A case was cited from Plowden, holding that a statute, which punished a prisoner as a felon who broke prison, did not extend to a prisoner who broke out when the prison was on fire, 'for he is not to be hanged because he would not stay to be burned.' Similar language to that in *Kirby's* case was used in *Carlisle* v. *United States*, 16 Wall. 147, 153."

In aid of construction of laws section 12, R. L. 1925, provides that the spirit and reason of a statute may be considered. That section reads as follows: "One of the most effectual ways of discovering the true meaning of the law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the legislature to enact it."

The word "issue," which is the crux of the question, is not a word of art. It should therefore be interpreted according to the circumstances in which it is used. And when, as here, it is used in a statute it should be given the meaning that comports with the end intended to be accomplished by the lawmaking body. It is obvious that the end sought to be accomplished by the writ of error statute

is that a judgment obtained in the lower court shall not be suspended and the right of its enforcement delayed by removal of the cause to this court unless the party in whose favor the judgment was rendered has received the protection of a bond against loss of the fruits of his victory. I think it cannot be questioned that so long as the writ, which is the mandate of removal, is not *served* on the designated officer of the lower court it is ineffective. Until it is served the cause in its entirety remains under the jurisdiction of the tribunal wherein it originated.

It is my view that when and only when the mandate reaches the lower court can it in any sense consistent with the purpose and spirit of the statute be said to have issued. Placing it in the hands of the clerk, I think, is not its issuance. It is preliminary to its issuance. It merely gives him something which he is authorized to issue, that is, to serve. If for any reason it should never be served on the officer to whom it is directed the case and the parties with all their rights and liabilities remain in *statu quo*. Of course if the writ issues, as I understand that term, before the bond is filed, manifestly the spirit of the statute is violated and the writ should be dismissed.

It is evident from the record in the case at bar that the bond was filed before the writ issued. It appears from this record that only one minute elapsed from the filing of the writ to the filing of the bond. These two acts were so close to each other in point of time as to have been practically simultaneous. It is hardly conceivable that during this almost inappreciable time (one minute) the writ was transmitted to the circuit court. To assume, in the absence of proof, that this was done would be to assume that when the writ was filed it was instantly, and before the bond was filed, taken to the clerk of the circuit court. This would be such an extraordinary procedure as to be beyond the realm of probability. The inclusion of the

words "and issued the same" in the clerk's indorsement upon the writ certainly is not sufficient to imply that any such procedure was followed.

I think the *Hackfeld* case, referred to in the majority opinion, is not conclusive against this view. In that case it does not appear either in the record or in the opinion of the court what time intervened between the filing of the writ and the filing of the bond.

There is another provision of the statute which requires the applicant for a writ of error to deposit the sum of twenty-five dollars to cover costs before a writ shall issue. It can hardly be imagined that the payment of this amount *immediately after* instead of *immediately before* the execution and filing of the writ would justify its dismissal. Similarly, I think the filing of the bond *immediately after* the execution and filing of the writ instead of *immediately before* does not justify the dismissal of the writ. In both cases I think a literal construction of the statute is entirely contrary to its purpose and spirit.